PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, | ) ) | CASE NO. 5:12CV02126 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| RLI INSURANCE COMPANY, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** [Resolving ECF Nos. 48, 50, 57 |
| Defendant. | ) | and 59] |

The following motions are pending before the Court: (1) Plaintiff Selective Insurance

Company of the Southeast's ("Selective") Motion for Summary Judgment, ECF No. 48; (2)

Defendant RLI Insurance Company's ("RLI") Second Motion for Summary Judgment/Motion for

Reconsideration, ECF No. 50; (3) Selective's Motion for Reconsideration[1], ECF No. 57; and (4)

RLI's Motion to Strike Selective's Use of Confidential Settlement Correspondence as Summary

Judgment Evidence, ECF No. 59.

The motions are fully briefed.  The Court has been advised, having reviewed the record,

the parties' briefs, and the applicable law.  For the reasons set forth below, the Court rules as

follows: Selective's motion for summary judgment is granted; RLI's motion for summary

---

[1]  Selective's Motion for Reconsideration is embedded within its Opposition to
RLI's Second Motion for Summary Judgment/Motion for Reconsideration.

(5:12CV02126)

judgment/motion for reconsideration is denied; Selective's motion for reconsideration is granted; and RLI's motion to strike is granted.

## I. Factual and Procedural Background

Selective and RLI are insurance companies that provided serial excess carrier coverage for the City of Barberton.  After being wrongfully convicted of rape and murder, Clarence Elkins sued the City of Barberton and its police officers.   Mr. Elkins settled with the City of Barberton for 5.25 million dollars.  Selective contributed 3.25 million dollars to the settlement.  RLI contributed nothing.  At issue is whether RLI is obligated to cover, or contribute to, the share of the settlement Selective paid.  For purposes of efficiency, the Court adopts and incorporates by reference the factual background of this case as set forth in the Memorandum of Opinion and Order at ECF No. 29, PageID #: 731–38.

This case was initially assigned to Judge Lesley Wells.  While before Judge Wells, Selective filed a motion for partial summary judgment (ECF No. 14), and RLI filed a motion for summary judgment (ECF No. 15).  Then, the Court considered the following question:  For the purposes of insurance coverage under an occurrence based policy, when does the tort of malicious prosecution occur?  Selective argued that the tort occurred at the time charges were brought against Elkins (*i.e.*, during RLI's coverage period, and before commencement of Selective's coverage period).  RLI argued that the tort occurred at the time the Barberton defendants failed to disclose the "Mann Memo" (the *Brady* material) to Elkins (*i.e.*, during Selective's coverage period, and after RLI's coverage period).  *See* Memorandum of Opinion and Order, ECF No. 29 at PageID #: 738.

2

(5:12CV02126)

Judge Wells granted Selective's motion for partial summary judgment, and denied RLI's motion for summary judgment, holding, "[T]he malicious prosecution of Mr. Elkins occurred for coverage purposes when criminal charges were filed." *Id.* at PageID #: 742.  Judge Wells further articulated that "the injury to [Mr. Elkins] began the day of his arrest, although it did not become undeniably apparent (to anyone besides Mr. Elkins) until charges were dismissed. " " *Id.* at PageID #: 746.  Based on the Court's holding, the tort occurred during RLI's coverage period, and before commencement of Selective's coverage period.

As Ohio courts have not directly addressed the issue of when the tort of malicious prosecution "occurs" for purposes of insurance coverage, the Court relied on the view of the majority of courts that have addressed the issue.  The Court also predicted how Ohio courts would rule on this issue by examining sufficiently analogous Ohio state law cases.  The Court concluded that those state law cases "stand for the proposition that when determining the triggering event for an occurrence based policy, courts should look to the time when injury began." ECF No. 29 at PageID #: 746.

RLI filed a motion to certify the summary judgment decision for interlocutory appeal and a motion for clarification.  ECF No. 32.  Judge Wells denied the motion to certify, granted the motion for clarification, and clarified her summary judgment rulings as follows:

> Under the RLI policy, "personal injury" is defined as "injury, other than bodily injury, arising out of false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, discrimination, humiliation, libel, slander or defamation of character or invasion of rights of privacy; all of which are committed in the conduct of the insured's business." The Court agrees with RLI that under the policy language, the loss of consortium claim does not fit the definition of personal injury. On the other hand, the definition does encompass the underlying constitutional claim. The constitutional claim at issue here was based on the

3

(5:12CV02126)

> allegation that Mr. Elkins was detained and prosecuted without probable cause.
> The Court concludes that the definition of "personal injury," which includes false
> imprisonment, wrongful detention, and malicious prosecution, encompasses this
> claim.

ECF No. 35 at PageID #: 785-86.

After Judge Wells issued her ruling and embarked on her well-earned retirement, the case

was transferred to the undersigned for disposition of the remaining issue—whether RLI received

proper notice of the Elkins lawsuit, pursuant to its contract as an excess insurer.  Against this

backdrop, the Court addresses the pending motions below.[2]

## II.  Motion to Strike

In opposition to RLI's motion for reconsideration, Selective attached a letter dated March

29, 2016 that was sent from RLI to Selective in response to Selective's demand and the Court's

order.  *See* ECF No. 57-1.  Selective relies upon the letter to assert that RLI has conceded that its

policy covered derivative loss of consortium claims.  *Id.* at PageID #: 1468.  RLI asks the Court

to strike the letter from evidence on the grounds that it is an inadmissible settlement

communication under Fed. R. Evid. 408, inadmissible hearsay, and an offer or demand of

judgment under Fed. R. Civ. P. 68.  ECF No. 59 at PageID #: 1477.  Selective opposes the

motion, arguing that the letter does not reflect an actual intent to compromise, fits within the Fed.

R. Evid. 801(d)(2) exemption from hearsay, and is not a Rule 68 offer of judgment because RLI

does not offer concessions.

Federal Rule of Evidence 408 provides, in pertinent part, that a statement

---

[2]  The motions are addressed in their logical rather than sequential order.

4

(5:12CV02126)

made during compromise negotiations about the claim "is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  The rule does not require that such statements have a tone of compromise.  A rule requiring courts to ascertain when such a tone exists would be untenable.  Selective's inclusion of the demand letter to prove a substantive matter adverse to RLI runs afoul of Rule 408.

For this reason, RLI's motion to strike is granted.  The Court will not rely on RLI's letter dated March 29, 2016, ECF No. 57-1, in rendering its rulings below.

### III.  RLI's Motion for Reconsideration

RLI asks the Court to reconsider Judge Wells's determination of what occurrence triggered the insurance coverage at issue.  It argues, "The Sixth Circuit ruled that: (1) Elkins' 42 U.S.C. 1983 claim was limited to the non-disclosure of the Mann Memo in 1999; and (2) Elkins' state law claims accrued in 1999."  ECF No. 50 at PageID #: 1179.  RLI also argues that if Selective maintains its position that its policy was never triggered by the Elkins lawsuit, Selective was a "volunteer," and is therefore barred from seeking recovery from RLI.  *Id.*  RLI fails to persuade on each argument.

The Sixth Circuit's statement that Elkins's state law claims accrued in 1999 is not in conflict with Judge Wells's ruling.  RLI reads the statement out of context.  The Sixth Circuit was addressing its lack of jurisdiction to review Elkins's state law claims on interlocutory appeal when it posited when that the state law claims accrued in 1999.  *See Elkins v. Summit Cty., Ohio, 615 F.3d 671, 678 (6th Cir. 2010)* (stating that the 2003 amendment to the Ohio Revised Code

5

(5:12CV02126)

permitting interlocutory appeals of denial of immunity applies only prospectively, and finding

that Elkins' claims accrued prior to the date of the amendment).  It is fairly obvious that the Sixth

Circuit  was not addressing the trigger for an occurrence based insurance policy.

As to RLI's claim that Selective was a volunteer, the Ohio Court of Appeals has

addressed this issue:

> The Supreme Court of Ohio has held that "[o]ne who, with knowledge of
> the facts and without legal liability, makes a payment of money, thereby becomes
> a volunteer" and that "[e]quity will not aid a volunteer."
> . . . .
> In each of those cases [where the court held that the insurance company
> was a "volunteer"], the evidence appears to be uncontroverted that the
> "volunteers" had full knowledge that another insurance company had specific
> coverage and liability on the incident for which they had executed a settlement.
> . . . .
> We conclude that the potential existence of another insurance policy that may or
> may not provide additional insurance coverage does not constitute "knowledge"
> sufficient to waive an insurance company's right to contribution against another
> insurance company whose coverage and liability are not fully demonstrated until
> after a settlement has been executed.
>
> Further, we do not want to discourage the prompt settlement of insurance
> claims.

*Westfield Natl. Ins. Co. v. Farmers Ins. Exchange*, No. 5selec–06–12, 169 Ohio App.3d 785,

789-90 ¶¶  19–25 (Dec. 26, 2006).

As Selective states, "At the time that Selective paid the settlement, the law surrounding

when a malicious prosecution claim occurs for insurance purposes was not settled in Ohio.

Indeed, RLI still argues that the law is something different than what this Court has held."  ECF

No. 57 at PageID #: 1459.  Selective did not have the requisite knowledge for the Court to find

that it acted as a volunteer.

6

(5:12CV02126)

RLI's motion for reconsideration is denied.

**IV.  Selective's Motion for Reconsideration**

Upon RLI's request (ECF No. 32), Judge Wells clarified that the term "personal injury" in RLI's policy encompasses malicious prosecution and the § 1983 claim for detainment and prosecution without probable cause.  *See* Order, ECF No. 35 at PageID #: 785–86.

The Court found that the loss of consortium claim, however, does not fit within the definition of personal injury.  *See id.*  RLI understands this ruling to mean that is "not responsible for $2,082,701.20 attributable to loss of consortium damages and related attorney fees."  ECF No. 50 at PageID #: 1159.  Selective moves the Court for reconsideration on this issue.  ECF No. 57 at PageID #: 1460–63.

RLI's policy provides, in pertinent part,

[RLI] will pay on behalf of the insured all sums the insured becomes legally obligated to pay as ultimate net loss because of . . . [p]ersonal injury . . . caused by an occurrence . . . .
. . . .
Personal Injury means: Injury, other than bodily injury, *arising out of* false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, discrimination, humiliation, libel, slander or defamation of character or invasion of rights of privacy; all of which are committed in the conduct of an Insured's business; except that for which coverage is afforded under advertising injury.

ECF No. 11-5 at PageID #: 131, 134 (emphasis added).

Applying a plain reading of the policy language, the Court finds that the loss of consortium is an injury *arising out of* the malicious prosecution of Elkins, and falls within the types of personal injury RLI agreed to cover.

Selective's motion for reconsideration is granted.

7

(5:12CV02126)

### V.  Parties' Cross-Motions for Summary Judgment

In light of the Court's foregoing determinations, the only remaining issue to be resolved is whether RLI received proper notice of the Elkins lawsuit.  The parties have filed cross motions for summary judgment on the issue.  *See* RLI's Second Motion for Summary Judgment/Motion for Reconsideration, ECF No. 50; Selective's Motion for Summary Judgment, ECF No. 48.

RLI argues that it is not required to provide coverage for the settlement agreement because Barberton and the police defendants failed to timely provide notice of the litigation to RLI.  Regarding notice, RLI's policy provides, in pertinent part,

VII. CONDITIONS
. . . .

L. Duties of Insured In the Event of an Occurrence Which Has Not Resulted In a Claim or Suit

Whenever you have information of an occurrence which involves injuries or damages reasonably likely to involve this policy written notice shall be given by or for the insured to us or to any of our authorized agents as soon as practicable. The notice shall contain:

1. Particular information sufficient to identify the insured;

2. Reasonably obtainable information with respect to time, place and circumstances of the occurrence; and

3. Names and addresses of the injured and of available witnesses.

M. Duties of the Insured In Event of Claims or Suit

Immediate written notice shall be given by the insured to us whenever:

1. A claim is made or suit is brought against the insured;

2. The insured receives notice that a right to bring a claim or suit against the insured will be asserted; or

8

(5:12CV02126)

 3. The insured obtains information that the obligations of underlying insurers to investigate, defend, pay on behalf of or indemnify the insured have ceased.

Every demand, notice, summons, amended complaint or other process received by the insured or a representative of the insured shall be forwarded with each notice. ECF No. 11-5 at PageID #: 136.

It is undisputed that the Elkins lawsuit was filed on December 18, 2006.  Stipulated Facts for Trial, ECF No. 82 at PageID#: 1755 ¶ 26.  It is also undisputed that National Casualty Company ("NCC")—the primary insurance carrier for the City of Barberton and its police officers at the time Elkins was arrested—was provided notice of the lawsuit upon its filing.  *Id.* at ¶¶ 25–26.  RLI and Selective, however, did not receive notice of the lawsuit until August 2010, after the Sixth Circuit affirmed the district court's denial of summary judgment to the Barberton Defendants.  *Id.* ¶ 29.  RLI contends that this late notice is unreasonable as a matter of law.

**A. Notice under Ohio Law**

"While the question of whether the insured met the notice condition is usually a question for the jury, an unexcused significant delay may be unreasonable as a matter of law." *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau*, 88 Ohio St.3d 292, 300 (2000).  "A provision in an insurance contract requiring 'immediate' notice means that the notice must take place 'within a reasonable time under the circumstances of the case.'" *Id.* at 303 (citation omitted).  Ohio courts have not yet decided how to analyze an excess insurer's claim that it was prejudiced by an insured's late notice.  The Ohio Supreme Court has, however, analyzed the issue of notice to an insurer in other contexts:

 This court in Ruby, [] stated, 'Unreasonable delay in the giving of notice may be presumed prejudicial to the insurer absent evidence to the contrary.' Furthermore, in Ormet, this court determined that the untimely notice of an environmental

9

(5:12CV02126)

> claim by the insured party prejudiced the insurers under the facts of that case. By
> inquiring into prejudice to the insurer in that case, instead of finding that the
> unreasonably late notice in and of itself caused a forfeiture of the coverage, this
> court indicated that *Ohio does not follow the traditional rule in late-notice cases
> but follows the modern trend of inquiring into prejudice*. Although Ormet was not
> a UIM [(uninsured motorist)] case and did not involve motor vehicle insurance, its
> core reasoning is applicable here.
>
> . . . .
>
> Accordingly, we hold that when an insurer's denial of UIM coverage is premised
> on the insured's breach of a prompt-notice provision in a policy of insurance, the
> insurer is relieved of the obligation to provide coverage if it is prejudiced by the
> insured's unreasonable delay in giving notice. An insured's unreasonable delay in
> giving notice is presumed prejudicial to the insurer absent evidence to the contrary

*Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 205-06 ¶¶ 79, 81 (2002) (citations

omitted) (emphasis added). The Court finds that the reasoning in *Ferrando* is applicable to the

case at bar. *See Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir.

2001) ("If the state supreme court has not yet addressed the issue presented, we must predict how

the court would rule by looking to all the available data.").

Assuming *arguendo* that the insured's more than three and a half year-delay in notifying

RLI of the lawsuit is unreasonable, Selective must rebut the presumption that RLI was prejudiced

by the delay.

**B. Prejudice**

RLI argues that it was prejudiced by the delay in notification for the following reasons:

(1) Before RLI was put on notice of the Elkins lawsuit, Adamson, former head of Barberton's

Detective Bureau, died. Adamson would have handled the "Mann Memo." His testimony was

not memorialized prior to his death, and as a result RLI was unable to obtain Adamson's

10

(5:12CV02126)

statement about what happened to the memo, ECF No. 50 at PageID #: 1170.  (2) "[I]n the four

years after the Elkins lawsuit was filed but before RLI was put on notice of it, RLI was prevented

from investigating and participating in the Elkins Lawsuit in a meaningful way.  In this regard,

before RLI was ever put on notice, both the district court and the Sixth Circuit had issued

substantive rulings addressing the remaining claims against the Police Defendants." *Id.* at

PageID#: 1173.

    RLI offers no more than mere conjecture regarding the potential affect Adamson's

testimony may have had on the case and Elkins' bargaining position.  *See* ECF No. 50 at PageID

#: 1170-73.  Put differently, there is no evidence that Adamson's testimony would have altered

the outcome of the lawsuit.  Additionally, RLI admits it did not have a right to control the

defense in the Elkins' lawsuit, ECF No. 48-3 at PageID #: 1084 ¶ 29, leaving unsaid how this

information may have be used had RLI been able to obtain it.  RLI's emphasis, on what it sees as

a missed opportunity, is misplaced.  The mediation at which the claims that remained in the civil

suit after the summary judgment motions were resolved is a better target.

    Turning to the mediation and late notice.  It is undisputed that RLI:  received notice of the

Elkins lawsuit on August 12, 2010;  was informed in advance of the November 16, 2010

mediation; and "expressly declined to participate" in the mediation.[3]  *See* Stipulated Facts, ECF

No. 82 at PageID #: 1755-54 ¶¶ 29, 34.  The case resolved at mediation without RLI's input or

contribution.  Now, having chosen abject supineness over even conditional negotiation, RLI

---

    [3]  It appears that RLI wrongly regarded the Sixth Circuit's ruling issued two days
before the Elkins lawsuit was filed, on August 10, 2010.

(5:12CV02126)

claims that it was unfairly prejudiced by the delay in notice and urges the Court to release it from any obligation.  The Court declines.

First, given the limited role of excess insurance carriers, RLI has not shown actual prejudice.  The Court finds that RLI has not been prejudiced by the delay.[4]  Second, if the Court (without deciding so, but assumes that) RLI has been prejudiced, the prejudice  was born of  its own admitted, deliberate inaction.  Lastly,  Selective has sufficiently rebutted the premise that RLI was unfairly prejudiced by the belated notice.[5]

### C.  Multiple Triggers

RLI asserts that even if its policy were triggered, "under a time-on-risk analysis, none of the settlement obligations are allocable to the RLI policy."  ECF No. 50 at PageID #: 1176. Inherent in this argument is RLI's rationale that there were somehow multiple triggers in this case.  The Court finds this argument continues to fail.  As the Court stated earlier, the malicious

---

[4] In its reply brief, Selective nicely lays out the distinctions between expectations of primary and excess insurance carriers.  *See* ECF No. 60 at PageID #: 1516-20.

[5]  In addition to its legal reasoning, the Court also notes the inequitable outcome that results if it were to adopt RLI's position.  Selective did not receive notice of the lawsuit any earlier than RLI, *see* Stipulated Facts, ECF No. 82 at PageID #: 1755 ¶ 29, and Selective was not responsible for the late notice to RLI.  Selective showed up and participated although, it is undisputed that Selective was not providing excess coverage at the time the charges were brought against Elkins.  Under these circumstances, and in light of RLI's obstinance, it would be inequitable to relieve RLI of its contractual commitment. *See, e.g., Pa. Gen. Ins. Co. v. Park-Ohio Indus.*, 126 Ohio St.3d 98, 104 (2010) ("The Nationwide and Continental insurance policies were contracts between those insurers and [the insured]. It would be inequitable to hold that [the insured]'s failure to abide by the notice provisions in the Nationwide and Continental policies eliminates Penn General's right to contribution, given the equitable nature of the all-sums approach to allocation and the fact that Penn General followed the procedure established in Goodyear during the litigation.").

(5:12CV02126)

prosecution was "triggered" at the time charges were filed against Elkins. Loss of consortium arises out of the malicious prosecution. RLI was the sole excess insurance provider for the City of Barberton and the police defendants at the time charges were filed.[6] "[W]hether or not anyone was aware that Mr. Elkins' prosecution was improvident at the time it was initiated, the injury to him began the day of his arrest, although it did not become undeniably apparent (to anyone besides Mr. Elkins) until charges were dismissed." Memorandum of Opinion and Order, ECF No. 29 at PageID #: 746. RLI is obligated to pay into the settlement under the excess insurance policy.

Selective's motion for summary judgment is granted. RLI's motion for summary judgment is denied. Selective is entitled to full recovery of the $3.25 million that it contributed to the settlement plus pre-judgment interest.

.

### VI. Conclusion

For the foregoing reasons, (1) Selective's motion for summary judgment, ECF No. 48, is granted; (2) RLI's motion for summary judgment/motion for reconsideration, ECF No. 50, is denied; (3) Selective's motion for reconsideration, ECF No. 57, is granted; and (4) RLI's motion to strike, ECF No. 59, is granted.

---

[6] Remarkably, Elkins was arrested on June 7, 1998 and indicted three days later, on June 10, 1998. This all occurred during the time when RLI's coverage was in effect, from June 29, 1997 to June 29, 1998.

(5:12CV02126)

In sum, the trigger issue remains resolved in favor of Selective.  RLI was the sole excess insurance carrier when the injury occurred.  Accordingly, Selective is entitled to full recovery of the $3.25 million that it contributed to the settlement plus pre-judgment interest.


IT IS SO ORDERED.


 September 21, 2016                           /s/ Benita Y. Pearson
Date                                        Benita Y. Pearson
                                            United States District Judge

14